IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WILLIAM E. GERDES, | ) | 4:08CV3246 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| JANET NAPOLITANO,[1] | ) | |
| SECRETARY, DEPARTMENT | ) | |
| OF HOMELAND SECURITY, | ) | |
| U.S. CITIZENSHIP AND | ) | |
| IMMIGRATION SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

The plaintiff, William E. Gerdes, is employed by the Department of Homeland Security (DHS) in Lincoln, Nebraska. Gerdes claims DHS unlawfully retaliated against him for filing Equal Employment Opportunity (EEO) complaints in January 1997,[2] October 1998,[3] and October 2006.[4] Specifically, Gerdes claims DHS engaged

---

[1] Janet Napolitano, the current United States Secretary of Homeland Security, is substituted as defendant in place of her predecessor in office, Michael Chertoff. *See* Fed.R.Civ.P. 25(d).

[2] The January 1997 EEO complaint was followed by a federal lawsuit which culminated in December 1999 with a favorable jury verdict for Gerdes.

[3] The October 1998 EEO complaint was resolved in October 2000 with a settlement agreement. Although Gerdes claims DHS's alleged retaliatory conduct also breached the settlement agreement, I previously determined that the court lacks subject matter jurisdiction to enforce the settlement agreement. *See* Memorandum and Order entered July 24, 2009 (filing 24).

[4] The October 2006 EEO complaint was filed with reference to the first claimed act of retaliation. EEO complaints have not been filed with reference to the other two claimed acts of retaliation.

in retaliatory conduct (1) in August 2006, when it failed to hire him for the position of Assistant Center Director (Records) at the Nebraska Service Center, (2) in September 2006, when it failed to hire him for a position in Lee Summit, Missouri, and (3) in October 2007, when it denied him a grade increase and reclassified his position to non-supervisory.

DHS has filed a motion to dismiss and motion for summary judgment.   DHS contends (1) that Gerdes failed to exhaust his administrative remedies regarding the second and third retaliation claims, so the court lacks subject matter jurisdiction over those claims, and (2) that, as to all three claims, (a) Gerdes cannot establish a prima facie case of retaliation, (b) DHS had legitimate, non-discriminatory reasons for its actions, and (c) Gerdes cannot prove that the proffered reasons were pretextual.

The motion to dismiss will be denied, but I will grant summary judgment (1) dismissing without prejudice the second and third retaliation claims for failure to exhaust administrative remedies and (2) dismissing with prejudice the first retaliation claim for lack of evidence.

### 1.   *Nature of the Action*

Gerdes alleges for the "first cause of action" in his complaint that he "has been the victim of unlawful retaliation, in violation of the Civil Service Reform Act." (Filing 1, ¶ 24.)  In the parties' Rule 26(f) planning conference report, the elements of this claim are defined as requiring proof that "Plaintiff had previously engaged in protected activity by filing grievances" and that "Defendant has refused Plaintiff job positions and promotions in retaliation for his protected activity."  (Filing 11, at 3.)

The Civil Service Reform Act of 1978 (CSRA), Pub.L. No. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.), prohibits the taking of a personnel action against an employee or applicant for employment because of

"the exercise of any appeal, complaint, or grievance right granted by law, rule, or regulation." 5 U.S.C. § 2302(b)(9)(A). The CSRA, however, does not provide a cause of action in federal court.[5]

From the parties' briefs, it appears they both are treating the retaliation claims as instead having been brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17. "Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.' § 2000e-3(a)." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006).

In 1972, Congress extended the protections of Title VII to employees of the federal government by mandating that personnel actions affecting federal employees "shall be made free from any discrimination based on race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-16(a), and providing that "[t]he provisions of section 2000e-5(f) through (k) of [Title VII], as applicable, shall govern civil actions brought hereunder" by federal employees. 42 U.S.C. § 2000e-16(d). This federal-sector provision does not incorporate § 2000e-3(a), but "does incorporate a remedial provision, § 2000e-5(g)(2)(A), that authorizes relief for a violation of § 2000-3(a)."

---

[5] "If the alleged retaliation results in adverse actions such as removal, suspension for more than 14 days, or reduction in pay, see [5 U.S.C.] § 7512, an appeal can be taken directly to the Merit Systems Protection Board (MSPB), §§ 7513(d), 7701, with judicial review in the United States Court of Appeals for the Federal Circuit, § 7703(b)(1). Retaliation claims based on less serious allegations are first investigated by the Office of Special Counsel. If the Office finds that there are reasonable grounds supporting the retaliation charge, it must report its determination to, and may seek corrective action from, the MSPB. §§ 1214(a)(1)(A), (b)(2)(B), (C), and 1214(c). Again, judicial review in the Federal Circuit is available. § 7703(b)(1)." *Gomez-Perez v. Potter*, 128 S.Ct. 1931, 1950 (2008) (Roberts, C.J., dissenting).

*Gomez-Perez v. Potter*, 128 S.Ct. 1931, 1941 n. 4 (2008) (acknowledging, without deciding, question of "whether Title VII bans retaliation in federal employment").[6]

For purposes of deciding the pending motion, I will assume that Gerdes has the right to file suit against DHS for retaliation under Title VII, provided that he has taken all necessary steps to preserve this right. DHS contends that Gerdes is only entitled to bring suit on the claim that he was not selected for the position of Assistant Center Director (Records) at the Nebraska Service Center in retaliation for his filing EEO complaints in January 1997 and October 1998.

### 2.  Motion to Dismiss

DHS argues that the claims concerning its failure to hire Gerdes for the Missouri position or to reclassify him as a supervisor should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, because Gerdes failed to exhaust his administrative remedies. In particular, DHS argues Gerdes failed to comply with 29 C.F.R. § 1614.105(a)(1), which required him to "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." This is not a jurisdictional requirement, however. *See Jessie v. Potter*, 516 F.3d 709, 712-13 (8th Cir. 2008). The question of Gerdes' compliance

---

[6] The Eighth Circuit also has not specifically addressed this question, but has permitted federal employees to bring retaliation claims under Title VII. *See, e.g., Watson v. O'Neill*, 365 F.3d 609, 614 (8th Cir. 2004) (affirming dismissal of federal employee's retaliation claim for failure to exhaust administrative remedies); *Jacob-Mua v. Veneman*, 289 F.3d 517, 522 (8th Cir. 2002) (affirming grant of summary judgment in favor of USDA); *Brower v. Runyon*, 178 F.3d 1002, 1007 (8th Cir.1999) (finding postal employee had not made out a prima facie case for retaliatory discrimination under Title VII); *Harris v. Secretary, U.S. Dept. of the Army*, 119 F.3d 1313, 1320 (8th Cir.1997) (holding district court did not abuse its discretion when it granted new trial on federal employee's retaliation claim).

with the regulation thus should not be analyzed under Rule 12(b)(1), which would permit the court to make factual determinations.[7]

A Rule 12(b)(1) motion may be treated as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[8] *See Cincinnati Indem. Co. v. A & K Const. Co.,* 542 F.3d 623, 625 (8th Cir. 2008) (citing *Less v. Lurie,* 789 F.2d 624, 625 n. 1 (8th Cir. 1986)). When confronted with a Rule 12(b)(6) motion, all the factual allegations contained in the complaint are accepted as true, and the complaint is reviewed to determine whether its allegations show that the pleader is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). Judged by this standard, the motion to dismiss must be denied because the complaint on its face does not show a failure to comply with 29 C.F.R. § 1614.105(a)(1).[9] DHS

---

[7] A district court has the authority to dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

[8] Because DHS previously filed a Rule 12(b)(6) motion to dismiss other counts of Gerdes' complaint, the instant filing should instead be treated as a Rule 12(c) motion for judgment on the pleadings. *See* Fed.R.Civ.P. 12(g)(2) & (h)(2)(B). The analysis under either rule is the same, though. *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (applying same standards to Rule 12(c) and Rule 12(b)(6) motions).

[9] Gerdes also alleges that he "believes he has exhausted all administrative procedures and remedies, and that any further administrative procedures would be futile." (Filing 1, ¶ 22.) The possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense. *Jessie*, 516 F.3d at 713 n. 2 (discussing, without deciding, whether compliance with the 45-day requirement is a condition precedent which must be pleaded and proved by the plaintiff or an affirmative defense which must be pleaded and proved by the defendant).

does not contend that Gerdes has the burden to plead and prove that he complied with this regulation.

Finally, the issue can be considered as part of DHS's motion for summary judgment, even though the motion was not so structured.[10]  *See* Fed.R.Civ.P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  Because Gerdes has already filed evidence of his own regarding the Rule 12(b)(1) motion, there is no need to delay consideration.  *See Riehm v. Engelking* 538 F.3d 952, 962 n. 5 (8th Cir. 2008) (plaintiffs had constructive notice of district court's treatment of defendants' motion to dismiss as motion for summary judgment where plaintiffs introduced and relied on material outside complaint); *Madewell v. Downs*, 68 F.3d 1030, 1048 (8th Cir. 1995) (lack of formal notice that district court will treat Rule 12(b)(6) motion to dismiss as motion for summary judgment is harmless where nonmoving party has submitted evidence in opposition to motion)  Accordingly, the motion to dismiss will be denied and all of the issues raised by DHS will be analyzed in accordance with the standards of Federal Rule of Civil Procedure 56.

### 3.  *Motion for Summary Judgment*

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

[10] After moving "for an order dismissing Plaintiff's complaint in part, pursuant to Federal Rule of Civil Procedure 12(b)(1)," DHS "[a]dditionally . . . move[d] for summary judgment pursuant to Federal Rule of Civil Procedure 56 on all remaining claims." (Filing 29.)  In DHS's supporting brief, however, it indicates that the motion for summary judgment is made "[a]dditionally *and alternatively*" to the motion to dismiss.  (Filing 31, at 2 (emphasis supplied).)

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Rule 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there

is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

Our local rules require the moving party to "include in the brief in support of the summary judgment motion a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). DHS has fully complied with this requirement by listing 72 paragraphs of facts it contends are not in dispute and by referencing the record in support of each fact stated.

Our local rules also provide that "[t]he party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. The response should address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response</u>." NECivR 56.1(b)(1) (emphasis in original).

In his response, Gerdes admits paragraphs 1-11, 20, 22-26, 28, 29, 33, 35, 36, 38, 49, 50, 52, 54, 55, and 61 of DHS's statement of material facts, but does not specifically address the remaining paragraphs. Instead, Gerdes provides a separate 41-paragraph listing of facts he claims are "in dispute" (filing 36, at 1-6), none of which directly refute the facts stated by DHS. For purposes of deciding the motion for summary judgment, therefore, the statement of material facts that is contained in DHS's supporting brief is accepted as true.

8

### A. Exhaustion of Administrative Remedies

Administrative remedies must be exhausted before a federal employee may bring an employment discrimination claim against a federal employer. *Ballard v. Rubin,* 284 F.3d 957, 964 n. 6 (8th Cir. 2002). The federal employer has the burden of proof on this affirmative defense. *See id.*

Uncontroverted facts material to the exhaustion issue, as set forth in DHS's brief, include the following:

> 16.   On or about August 10, 2006, Plaintiff electronically applied for Vacancy Announcement No. CIS-117897-NBC, Assistant Center Director (Customer Relations) in Lee Summit, Missouri (Filing 1 [Plaintiff's Complaint], ¶ 9; Clark Decl. [Declaration of Patricia A. Clark (filing 30-2)] ¶ 10). On his application questionnaire, Plaintiff completed only the first question out of 57. Among the 56 unanswered questions, Plaintiff did not answer questions 54 and 55 regarding time in grade or question 56 certifying that he lived in the local commuting area. These three questions were qualifying questions which were used by the system to automatically screen out applicants that were not qualified for the position. (Clark Decl. ¶ 10).[11]
>
> * * *
>
> 18.   Plaintiff was automatically eliminated as ineligible by USA STAFFING based upon his failure to respond to one of the self-certifying questions regarding time in grade. Plaintiff questioned

---

[11] Gerdes states: "After completion and submission of his application, Gerdes did not receive an e-mail back, verifying his application had been accepted. (Ex. A, 29:19-25,30:1-7). Gerdes ultimately submitted an application before the closing date of the position. (Filing 8 at 3) DHS claimed Gerdes had submitted two applications, the latter of which overrode the first. DHS also claimed that Gerdes' failure to answer a self-certifying question disqualified him from further consideration. (Filing 8 at 3)." (Filing 36, at 6, ¶¶ 35-37.)

9

this automatic elimination, and CBP Human Resources in Burlington reviewed his application and the circumstances surrounding it, and determined that even if he had answered this question and had been one of the highest ranking candidates, he would have been eliminated as ineligible because the announcement was limited to candidates living in the local commuting area.   Such limitation on candidate pools is permissible pursuant to the terms of the Tri-Bureau Merit Promotion Plan, which was adopted in 2005 (the "Plan").   The Plan governed all Merit Promotion announcements, including the vacancy at issue. (Clark Decl. ¶ 11).[12]

* * *

20.    On September 12, 2006, Plaintiff received notification that he was ineligible for the vacancy because it was limited to those living in the local commuting area (Filing 1, ¶ 11).

* * *

22.    By e-mail dated October 5, 2006, Plaintiff contacted EEO counselor Ramona Hill, arguing that his exclusion from consideration for Vacancy 117897, constituted a breach of Paragraph 2c of the Agreement reached between Plaintiff and Legacy INS on October 17, 2000. (Maltby Decl. [Declaration of Judy Maltby (filing 30-1)] ¶ 10 and Attch. A, p.3; Filing 1, ¶ 13-14).

23.    On November 1, 2006, Ms. Hill informed Plaintiff that he must notify DHS Office of Civil Rights and Civil Liberties ("DHS CRCL") of any alleged settlement breach.   (Maltby Decl. ¶ 11 and Attch. A, p. 2).

_____

[12] Gerdes states that he "requested that his application be reconsidered, but DHS refused because Gerdes did not live within the restricted area. (Filing 8 at 3)." (Filing 36, at 6, ¶ 38.) Gerdes also states he "is not aware of any other applicants who were treated in a similar manner and prohibited from applying. (Filing 1, ¶12)." (Filing 36, at 6, ¶ 39.)

24.     By letter dated March 31, 2007 (hereafter, the "Breach Notification"), Plaintiff officially notified DHS CRCL that he believed that paragraph 2c of the Agreement reached between Plaintiff and Legacy INS on October 17, 2000, had been violated when the Agency determined he did not meet the eligibility criteria.  (Maltby Decl. ¶ 12 and Attch. A).

25.     On August 30, 2007, the Agency issued its response to Plaintiff's Breach Notification (hereinafter, the "Response").   The Agency found that no breach had occurred as to Paragraph 2c, and alternatively noted that the Breach Notification was untimely.  As such, Plaintiff was not entitled to the relief requested.  (Maltby Decl. ¶ 13 and Attch. B).

26.     On September 25, 2007, Plaintiff appealed the August 30, 2007, decision to the EEOC Office of Federal Operations ("EEOC OFO").  As of December 17, 2009, that appeal was pending.  (Maltby Decl. ¶ 14).

27.     Plaintiff did not file an EEO complaint regarding his non-selection for the position in Lee Summit, Missouri (Plaintiff's Depo. 60:5-9; Maltby Decl. ¶ 8).

* * *

56.     Sometime in 2005, the Information Technology ("IT") divisions in the USCIS field offices, such as the NSC, came under the supervision of USCIS headquarters in Washington, D.C. (Declaration of Kent Smith Jr. [filing 30-5] at paragraph 3, attached to Defendant's Index of Evidentiary Materials submitted in support of its Motion to Dismiss and Motion for Summary Judgment (hereinafter, "Smith Decl. ¶ __"); Declaration of Jeff Conklin [filing 30-4] at paragraph 2, attached to Defendant's Index of Evidentiary Materials submitted in support of

its Motion to Dismiss and Motion for Summary Judgment (hereinafter, "Conklin Decl. ¶ __ ")).[13]

57.   Jeff Conklin became the first Chief Information Officer ("CIO") of USCIS in June 2006, and was located at headquarters in Washington, D.C..  Mr. Conklin had supervisory authority over the entire IT Office of the USCIS in both the field and at headquarters.  The NSC IT division was under Mr. Conklin's supervision.  (Conklin Decl. ¶ 1; Smith Decl. ¶ 6).

* * *

60.   As part of the restructuring to put the field office IT departments under the supervision of headquarters, Mr. Conklin notified Kent Smith, Jr., Chief of the Classification Branch in the Human Resources Operations Center for USCIS in Burlington, Vermont, of several instances where field personnel were improperly classified (Smith Decl. ¶ 3).  Over a period of time, as Mr. Smith and Mr. Conklin became aware of such circumstances, they sought to properly reclassify those personnel into appropriate positions.  Plaintiff was one of those situations.  (Smith Decl. ¶ 3).

61.   Around May of 2007, Plaintiff requested a desk audit seeking a grade increase because he felt he was doing GS-13 work (Plaintiff's Depo. [filing 30-6] 54:22-55:4; 55:23-56:1).  Plaintiff was a Supervisory Management and Program Analyst, GS-343-12 at the NSC (Smith Decl. ¶ 4; Conklin Decl. ¶ 4).  Plaintiff sought reclassification to the level of GS-13 in a classification appeal to OPM in August of 2007 (Smith Decl. ¶ 4; Conklin Decl. ¶ 4).

---

[13] Gerdes states that "[i]n the Defendant's Initial Disclosures, DHS did not disclose [either] Kent Smith Jr. [or Jeff Conklin] . . . as a person having discoverable information that DHS may use to support its claims or defenses.  (Ex. H)."  (Filing 36, at 6, ¶¶ 40, 41.)  Since making this statement in his brief, however, Gerdes has apprised the court that "a Supplemental Disclosure was filed on December 11, 2009 (ECF Filing No. 27)."  (Filing 39.)  The pending motion was filed on January 5, 2010.

* * *

64.    As required by OPM, Mr. Smith reviewed and made a determination regarding Plaintiff's request for reclassification of his position, taking into consideration the overall structure of the Agency and determined that Plaintiff was improperly classified as a manager because he did not supervise three or more persons (Smith Decl. ¶ 5; Conklin Decl. ¶ 5).

* * *

66.    Mr. Smith informed Mr. Conklin that he found Plaintiff to be improperly classified (Smith Decl. ¶ 6).  Mr. Conklin concurred that Plaintiff was improperly classified because he did not supervise three or more employees and that his position should be reclassified as a non-supervisory position (Management and Program Analyst, GS-0343-12) (Smith Decl. ¶ 6; Conklin Decl. ¶ 5).

67.    On October 14, 2007, the reclassification of Plaintiff's position to a nonsupervisor Management and Program Analyst, GS-343-12, became effective (Smith Decl. ¶ 7; Conklin Decl. ¶ 6). Neither Plaintiff's salary nor his benefits were affected as a result of the reclassification (Smith Decl. ¶ 7; Conklin Decl. ¶ 6; Plaintiff's Depo. 55:5-15).

68.    On December 13, 2007, OPM notified Plaintiff that since he was reassigned to the position of Management and Program Analyst, GS-0343-12 on October 14, 2007, his appeal was cancelled by OPM because he cannot appeal the grade of a position he did not encumber. Thus, an OPM desk audit was unnecessary and inappropriate.  (Smith Decl. ¶ 8 and Attch. A).

* * *

71.    At the time his reclassification was denied, Plaintiff was familiar with the EEO process and had filed several prior EEO complaints (Plaintiff's Depo. 58:14-19).

13

> 72.    Plaintiff did not file a complaint with the EEO office concerning his reclassification (Plaintiff's Depo. 58:7-9).[14]

(Filing 31, at 7-9, 17-21 (headings omitted; hyperlinks added).)

While DHS argues that Gerdes failed to initiate contact with an EEO counselor within 45 days to complain that the agency had retaliated against him when it failed to select him for the Missouri position and when it reclassified his existing position, it has presented no evidence to support this factual contention.[15] DHS has shown, however, that Gerdes did not file an EEO complaint with respect to either of these retaliation claims.[16] The filing of a formal complaint with the agency is the second step that a federal employee ordinarily must take when pursuing a Title VII claim. *See* 29 C.F.R. § 1614.407 (civil action may be filed within 90 days after receipt of agency's final action on complaint or Equal Employment Opportunity Commission's final decision on appeal, or after 180 days from date of filing complaint or appeal); 42 U.S.C. § 2000e-16(c).

---

[14] Gerdes states that "[s]hortly after the reclassification, [he] contacted the Office of Civil Liberties. (Ex. A, 57: 6-10). Gerdes has received a final disposition from the Office of Civil Liberties in regard to his reclassification. (Ex. A, 57:21-25, 58:1-4)." (Filing 36, at 4, ¶¶ 19-20.) DHS indicates in its reply brief that it does not dispute these two statements. (Filing 39, at 4.) Gerdes also states that "[a]n EEO counselor has not been assigned to Gerdes' complaint regarding his reclassification. (Ex. A, 58:20-24)." (Filing 36, at 4, ¶ 21.)

[15] DHS's evidence even shows that Gerdes contacted an EEO counselor less than one month after he found out that he was declared ineligible for the Missouri job, and DHS admits that Gerdes contacted the Office of Civil Liberties shortly after his position was reclassified. I do not decide whether either of these contacts satisfied the requirements of 29 C.F.R. § 1614.105(a)(1).

[16] The EEO complaint must be filed within 15 days after the employee receives notice from the EEO counselor that the informal counseling period has ended. *See* 29 C.F.R. §§ 1614.105(d)-(f) & 1614.106(b).

14

This filing requirement may be subject to waiver or estoppel, *see Miller v. Runyon*, 32 F.3d 386, 389 (8th Cir. 1994), but Gerdes does not seriously contend that either doctrine is applicable in this case.  Gerdes simply states, without providing any explanation or citation to supporting evidence, that he "relied on the instructions made by DHS' own agents, and he believed that he had completed all of the necessary filing."  (Filing 36, at 20.)  If Gerdes is referring to the information provided by the EEO counselor on November 1, 2006, that he needed to contact the Office of Civil Rights and Civil Liberties regarding his claim that DHS breached the settlement agreement, there is no showing that such information was incorrect or misleading in any respect.   I therefore find that Gerdes was required to exhaust his administrative remedies regarding all claims of retaliation.  *See, e.g., Bailey v. U.S. Postal Service*, 208 F.3d 652, 654 (8th Cir. 2000) (affirming summary judgment in favor of USPS where employee offered no evidence to support contention that EEO counselors led her to believe she had taken all steps necessary to preserve her right to file suit).

Gerdes argues, however, that "requiring [him] to exhaust his administrative remedies would be futile.  The litigation has been ongoing for over one year.  DHS is well aware of the issues involved, and has conducted comprehensive discovery. It does not make sense to force Gerdes to drop this claim, re-file, and await another tedious administrative procedure. . . . Furthermore, DHS has not claimed any prejudice which has occurred due to the alleged failure of Gerdes to exhaust his administrative remedies.  Dismissing the case now would be a waste of judicial resources . . .." (Filing 36, at 20.)  There is no merit to this argument, which disregards the fact that exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency."  *Cornish v. Blakey*, 336 F.3d 749, 753 (8th Cir. 2003) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).

Unsupported and speculative claims of futility do not excuse a claimant's failure to exhaust his or her administrative remedies.  *Midgett v. Washington Group Int'l Long Term Disability Plan*, 561 F.3d 887, 898 (8th Cir. 2009).  An administrative

15

remedy will be deemed futile if there is doubt about whether the agency could grant effective relief. *Id.*; *Ace Property & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992, 1000 (8th Cir. 2006). Such doubt does not exist in this case, although the agency is likely to find that Gerdes is not entitled to relief because he failed to comply with procedural requirements.

Because it is undisputed that Gerdes did not file an EEO complaint regarding his non-selection for the position in Missouri (see paragraph 27 of DHS's statement of material facts), or concerning his reclassification (see paragraph 72 of DHS's statement of material facts), and because there is no evidence to support a finding that Gerdes should be excused from exhausting his administrative remedies regarding these claims, they will be dismissed without prejudice. I next consider whether the remaining claim, regarding Gerdes' non-selection for the Nebraska position, should be dismissed on the merits.

### B. Title VII Retaliation Claim

Uncontroverted facts material to the remaining claim, as set forth in DHS's brief, include the following:

1. Plaintiff is a resident of Waverly, Nebraska (Filing 1, ¶ 3).

2. Plaintiff is currently employed with the Department of Homeland Security, United States Citizenship and Immigration Services ("USCIS"), Nebraska Service Center ("NSC") in Lincoln, Nebraska (Filing 1, ¶ 3; Deposition of William Gerdes at page 5, lines 17-23, attachment A to the Declaration of Robert L. Homan [filing 30-6], attached to Defendant's Index of Evidentiary Materials submitted in support of its Motion to Dismiss and Motion for Summary Judgment (hereinafter, "Plaintiff's Depo. page:line")).

16

3.     DHS is an agency of the United States government and operates the NSC (Filing 1, ¶ 4).  References to the defendant include DHS and NSC.

4.     Plaintiff began his employment as a term contract representative working at Immigration and Naturalization Service, the predecessor to DHS (hereinafter "Legacy INS"), in 1993 (Plaintiff's Depo. 8:21-9:11; Ex. 1).

5.     Plaintiff was hired by Legacy INS as a Data Assurance Assistant, GS-07, in September 1993 (Plaintiff's Depo. Ex. 1, p. 3).

6.     Plaintiff was promoted to an Immigration Information Officer, GS-08, in 1995 and a Program Analyst, GS-12, in 1998 (Plaintiff's Depo. Ex. 1, p. 2).  Plaintiff held various GS-12 positions and is currently a Management and Program Analyst, GS-12, Step 7 (Plaintiff's Depo. 5:24-6:7; 10:23-11:22; Ex. 1 p. 1-2).

7.     Plaintiff temporarily served as a GS-13 Supervisory Information Technology Specialist for a 120-day period of time while his supervisor was on detail (Plaintiff's Depo. 11:15-18; 19:15-20:4).

8.     In January 1997, Plaintiff filed his first EEO Complaint involving his non-selection in 1996 for a Contractor Performance and Analysis Unit Analyst position at the NSC.   After exhausting administrative remedies, Plaintiff filed a civil action in the United States District Court for the District of Nebraska, Case No. 4:98CV3081.  (Declaration of Judy Maltby [filing 30-1] at paragraph 3, attached to Defendant's Index of Evidentiary Materials submitted in support of its Motion to Dismiss and Motion for Summary Judgment  (hereinafter "Maltby Decl. ¶ __")).

9.     Plaintiff filed a Complaint in the United States District Court for the District of Nebraska, Case No. 4:98CV3081 on March 11, 1998, alleging gender discrimination (Filing 1 in Case No. 4:98CV3081).  Following a jury trial, a verdict was entered in Plaintiff's favor on December 17, 1999 (Filing 48 in Case No. 4:98CV3081).

10.    On October 15, 1998, Plaintiff filed an EEO Complaint, Agency No. I-99C066, involving his non-selection for a Supervisory Program Analyst position at the NSC.  On October 17, 2000, Plaintiff settled this complaint with the agency (Maltby Decl. ¶ 4; Filing 1, Ex. A [filing 1-2]).  Pursuant to the terms of the Agreement, Legacy INS agreed to [sic] (a) to retroactively promote Plaintiff to GS-12/1 as of March 14, 1999; (b) to send Plaintiff to alternative dispute resolution classes; and (c) "to consider, in good faith, the [Plaintiff] for any job positions for which he may apply and for which he may qualify." (Filing 1, Ex. A at ¶ 2; Maltby Decl. ¶ 9).

11.    On October 26, 2006, Plaintiff filed another EEO Complaint, Agency No. HS-06-003702, in which he asserted discrimination on the basis of age, reprisal, and parental status following his non-selection for the Assistant Center Director (Records) position at the Nebraska Service Center in Lincoln, Nebraska.  (Maltby Decl. ¶ 6).

* * *

28.    On or about May 2, 2006, Defendant posted vacancy announcement CIS 111080-NSC for Assistant Center Director (Records), GS-0301-12/13, at the NSC in Lincoln, Nebraska.  The announcement was issued by the U.S. Customs and Border Protection Agency ("CBP"), Human Resources in Burlington, Vermont.  USCIS contracts with CBP for personnel services.  (Declaration of Greg Christian [filing 30-3] at paragraph 3, attached to Defendant's Index of Evidentiary Materials submitted in support of its Motion to Dismiss and Motion for Summary Judgment (hereinafter, "Christian Decl. ¶ __")).

29.    Plaintiff applied on-line for the posted position of Assistant Center Director for the Records Division (Christian Decl. ¶ 4).

30.    Plaintiff was not working in the Records Division at the time he applied for the Assistant Center Director position (Plaintiff's Depo. 31:16-18; Christian Decl. ¶ 5 and Attach. A).  He had previously worked in the Records Division as a Program Analyst for a period of approximately four years (Plaintiff's Depo. 31:19 - 32:4; Christian Decl. ¶ 5 and Attach. A).  Plaintiff had not performed the functions of an

Assistant Center Director for the Records Division (Plaintiff's Depo. 32:5-7; Christian Decl. ¶ 5 and Attch. A).

31.    CBP Human Resources issued two Selection Certificates, one grade 12 and one grade 13, containing candidate names to NSC. (Christian Decl. ¶ 6; Deposition of Ruth Sterns at page 20, line 9 through page 21, line 4, attachment B to the Declaration of Robert L. Homan [filing 30-6], attached to Defendant's Index of Evidentiary Materials submitted in support of its Motion to Dismiss and Motion for Summary Judgment (hereinafter, "Stearns Depo. page:line")).

32.    All candidates listed on the Selection Certificates were interviewed by the panel.   There were a total of nine candidates interviewed.    Several candidates appeared on both certificates. (Christian Decl. ¶ 8; Stearns Depo. 27:23; Deposition of Jonnie M. Lebow at Exhibit 1, paragraph 3, attachment C to the Declaration of Robert L. Homan [filing 30-6], attached to Defendant's Index of Evidentiary Materials submitted in support of its Motion to Dismiss and Motion for Summary Judgment (hereinafter, "Lebow Depo. Ex. __, ¶ __")).  Plaintiff was interviewed on or about July 12, 2006 (Plaintiff's Depo. 32:8-10; Ex. 4, p. 3; Christian Decl. ¶ 9).

33.    The interviewing panel included the NSC Deputy Director, Greg Christian, and two Assistant Center Directors, Ruth Stearns and Jonnie "Mike" Lebow (Plaintiff's Depo. 32:11-14; Christian Decl. ¶ 7; Stearns Depo. 19:3-15; Lebow Depo. Ex. 1 ¶ 3).

34.    Plaintiff knew Greg Christian since Mr. Christian started working at the NSC in 2000 (Plaintiff's Depo. 32:15-22).   When Plaintiff was the Assistant Center Director for Information Technology he sometimes worked under Mr. Christian (Plaintiff's Depo. 32:23-25). Plaintiff had a good working relationship with Mr. Christian (Plaintiff's Depo. 33:1-3; Christian Decl. ¶ 2).  Before applying for the Assistant Center Director position for the Records Division, Plaintiff had not told Mr. Christian that he had filed a previous federal lawsuit or that he filed previous EEO complaints (Plaintiff's Depo. 33:4-10).  Plaintiff had not discussed his prior EEO activity with Mr. Christian and was not aware

if Mr. Christian had discussed Plaintiff's prior EEO activity with any other person (Plaintiff's Depo. 33:11-18).

35.     Ms. Stearns worked at the NSC ever since Plaintiff was hired (Plaintiff's Depo. 33:19-25).   Ms. Stearns did not supervise Plaintiff, but they worked in the same division for a couple a years and always had a good working relationship (Plaintiff's Depo. 33:19-21; 34:1-16; Stearns Depo. 12:16 - 13:13).  Plaintiff did not directly tell Ms. Stearns that he filed a previous federal lawsuit or that he had filed previous EEO complaints (Plaintiff's Depo. 34:17-23).

36.     Mr. Lebow was Plaintiff's supervisor for less than a year in approximately 1999 (Plaintiff's Depo. 36:1-3; Lebow Depo. 16:7-17:23 & Ex. 1, ¶ 1).   According to Plaintiff, he and Mr. Lebow "had our differences" (Plaintiff's Depo. 36:4-5).  Mr. Lebow supervised Plaintiff during Plaintiff's federal court case and a previous EEO settlement (Plaintiff's Depo. 36:6-16).[17]

37.     The panel asked the same questions of each candidate and each panel member had a printed question page for each candidate upon

---

[17] Gerdes states that "Johnnie Lebow (hereinafter 'Lebow') had an opportunity to evaluate Gerdes in September or October, 1998. (Ex. D, 30:17-25, 31:1-2).  In this evaluation, Lebow rated Gerdes as 'excellent', but that this rating was upgraded to 'outstanding' by another person. (Ex. A, 36:23-25, 37:1-13; Ex. D, 31:3-13).  The change to the 'outstanding' rating was the result of a grievance filed by Gerdes, as it related to his performance rating by Lebow. (Ex. A, 37:1-13).  Lebow admitted that '[a]t the time it kind of bothered me that my supervisor didn't trust my judgment'. (Ex. D, 32:17-24)."  (Filing 36, at 4-5, ¶ 22-25.)

Gerdes also states that "Frank G. Heinauer (hereinafter 'Heinauer') is the director of the Nebraska Service Center. (Ex. C, 5:20-25, 6:1-6).  Heinauer was not aware of Lebow telling him that he should not have been on the selection panel in regard to Gerdes. (Ex. C, 11: 13-20).  Heinauer testified that he would hope that if somebody had a grudge or personal adverse information, they would notify him that that [sic] they would not be the best candidate to sit on the panel. (Ex. C, 11 :3-12)." (Filing 36, at 5, ¶¶ 26-28.)

to keep his/her own notations (Christian Decl. ¶ 10; Stearns Depo. 22:4-7 & Ex. 2, ¶ 3; Lebow Depo. Ex. 1, ¶ 3).

38.   Plaintiff testified that nothing inappropriate was said during his interview and that he thought he had great responses to all the questions (Plaintiff's Depo. 41:6-13).

39.   After all interviews were concluded, the panel members each listed their top three candidates based upon the interviews and their review of the application packets (Christian Decl. ¶ 11; Stearns Depo. 28:2-19; Lebow Depo. Ex. 1, ¶ 6).

40.   Panel member Christian ranked his top three candidates in the following order: (1) Roger Coleman, (2) Justyn Gydesen, (3) James McConnell (Christian Decl. ¶ 11). Mr. Christian placed Roger Coleman as his top pick because Mr. Coleman had done a good job serving as an Acting Supervisor and he had been with the agency for 19 years (Christian Decl. ¶ 11).

41.   Panel member Stearns ranked her top three candidates in the following order: (1) James McConnell, (2) Justyn Gydesen, (3) Roger Coleman (Stearns Depo. 26:7-8). Ms. Stearns felt both Mr. McConnell and Mr. Gydesen had very strong interviews and demonstrated through their answers and demeanor that they possessed each quality she was looking for (Stearns Depo. Ex. 2, ¶ 6). She felt the NSC would benefit and get new and exciting ideas from either Mr. McConnell or Mr. Gydesen. Ms. Stearns placed Mr. Coleman in her top three because he had served in an acting capacity for the position, had done a good job, and had completed the Executive Leadership Program training (Stearns Depo. Ex. 2, ¶ 6).

42.   Panel member Lebow ranked his three top candidates in the following order: (1) James McConnell, (2) Justyn Gydesen, (3) Roger Coleman (Lebow Depo. 65:1-4 & Ex. 1, ¶ 6). Mr. Lebow felt that Plaintiff did not exhibit confidence or enthusiasm about the position during his interview, he did not have as much experience with the Records Division as other candidates, and he did not mention what innovations he would bring to the Records Division. Mr. Lebow also

found that Plaintiff was slow in giving his answers and at times wandered off the point of the question and did not seem to take the interview process seriously. (Lebow Depo. 21:7-20; 25:11-21 & Ex. 1, ¶ 4, 5).[18]

43.    The panel members unanimously agreed on the top three candidates - James McConnell, Justyn Gydesen, and Roger Coleman (Christian Decl. ¶ 14; Stearns Depo. 29:1-6; Lebow Depo. Ex. 1, ¶ 6).

44.    All panel members indicated that all three of the recommended candidates were well qualified and clearly stood out from the other six candidates, including Plaintiff (Christian Decl. ¶ 14; Stearns Depo. Ex. 2 ¶ 5, 6; Lebow Depo. Ex. 1, ¶ 6).

45.    Plaintiff was not considered one of the top three candidates because his interview performance was not as good in comparison to the recommended candidates (Christian Decl. ¶ 14; Stearns Depo. 26:9-11 & Ex. 2, ¶ 5; Lebow Depo. Ex 1, ¶ 6).[19]

---

[18] Gerdes states that "[d]uring [his] interview with the selection panel, Lebow testified that he kept handwritten notes. (Ex. D, 58:13-16). These handwritten notes revealed that Gerdes' Air Force experience was a positive, Gerdes' answer regarding taking care of the community at NSC contained nothing negative, Gerdes identified his Air Force experience and his supervision of the ICPS team, and Gerdes had a positive relationship with the current IT contractor. (Ex. D, 58:13-25,59:1-25,60:1--22)." (Filing 36, at 5, ¶¶ 30, 31.) DHS states in its reply brief that for purposes of the motion, it does not dispute that Lebow made these notes. (Filing 39, at 4.)

[19] Gerdes states that "[d]uring the interview process of the Assistant Director Position, Gerdes had an initial rating of 99, the highest of all of the candidates. (Ex. H)." (Filing 36, at 5, ¶ 29.) DHS objects that this statement is not supported by the evidence and explains that the rating was given by the USCIS Human Resources Division in Burlington, Vermont, which determined the candidates who were eligible for inclusion on the selection certificates. The candidate ratings were not given to the interviewing panel. (Filing 39, at 3; filing 40-1 (Supplemental Declaration of Patricia A. Clark).)

46.    Each panel member relied wholly upon the application packets of the candidates and/or the candidate interviews in making his/her recommendations, and did not consider any protected factors such as age or prior EEO activity (Christian Decl. ¶¶ 13, 19; Stearns Depo. 36:23-37:20; Lebow Depo. 78:16-19 & Ex. 1, ¶ 6, 10). The panel members did not discuss any applicant's prior EEO history, nor did they seek such information for anyone outside the panel (Christian Decl. ¶ 13).

47.    The panel members did not discuss the interviewees before ranking them (Stearns Depo. 26:1-4) and no remarks or comments were made about Plaintiff (Stearns Depo. 26:12-22; Christian Decl. ¶ 13).

48.    Since the panel members did not agree on the ranking of the top three candidates, no one recommendation was made. Instead, each individual panel member's rankings were provided to the selecting official, Frank Gerard Heinauer, Acting Director of the NSC. (Christian Decl. ¶ 15; Stearns Depo. Ex. 2, ¶ 6; Lebow Depo. Ex. 1, ¶ 6; Deposition of Frank Gerard Heinauer at Exhibit 1, paragraphs 10, 11, attachment D to the Declaration of Robert L. Homan [filing 30-6], attached to Defendant's Index of Evidentiary Materials submitted in support of its Motion to Dismiss and Motion for Summary Judgment (hereinafter, "Heinauer Depo.")).

49.    Mr. Heinauer began working at the NSC as the Acting Director in June of 2006 (Heinauer Depo. 5:23-6:1). Prior to that time, he worked at the Chicago District Office from January 2006 to June 2006 and at the Omaha District Office from August 1995 to January 2006 (Heinauer Depo. 6:2-6). As the Acting Director of the NSC, Mr. Heinauer did not directly supervise the Information Technology ("IT") department, the department Plaintiff worked in, because that department reported directly to headquarters (Heinauer Depo. 6:16-7:1).

50.    Mr. Heinauer relied upon the three recommendations provided by the panel members and did not consider the other candidates (Heinauer Depo. Ex. 1, p. 3). Points were assigned for each first choice, second choice, and third choice ranking and the cumulative points were tallied. The position was offered to James McConnell

23

(Heinauer Depo. 27:21-24 and Ex. 1, p. 3; Christian Decl. ¶ 16). However, Mr. McConnell declined the position and the position was offered to the second ranking candidate, Justyn Gydesen (Heinauer Depo. 28:18-19 and Ex. 1, p. 3; Christian Decl. ¶ 17). Mr. Gydesen accepted the position (Christian Decl. ¶ 17).[20]

51.    Plaintiff's name was not mentioned to Mr. Heinauer in any discussion with the interviewing panel during the hiring process (Heinauer Depo. Ex. 1, p. 3).

52.    Plaintiff testified that prior to applying for the Assistant Center Director position in the Records Division, he had sat in on a couple management meetings with Mr. Heinauer; that Mr. Heinauer had not been at the NSC very long prior to making the selection; and that he had not discussed with Mr. Heinauer his previous federal lawsuit or his previous EEO complaints (Plaintiff's Depo. 52:2-53:2).

53.    At the time of selection for the Assistant Center Director (Records), Mr. Heinauer was unaware of any prior EEO activity brought by Plaintiff.  He was not aware whether or not any of the interviewing panel members had knowledge of Mr. Gerdes' prior EEO activity (Heinauer Depo. 68:4 -21).  Plaintiff's name was not mentioned to Mr. Heinauer in any discussion with the interviewing panel during the hiring process because Plaintiff did not make the panel's top three candidates list.  (Heinauer Depo. Ex. 1, p. 3).

54.    On or about August 2, 2006, Plaintiff became aware that he had not been selected for the Assistant Center Director position for the Records Division at the NSC (Plaintiff's Depo. Ex. 4, p. 6).

---

[20] Gerdes states that he "had more agency experience than the person selected, Mr. Gydesen (hereinafter 'Gydesen'). (Ex. D, 64: 1-8). Gydesen did not have any service experience. (Ex. D, 59:4-6)."  (Filing 36, at 5, ¶¶ 32-33.)  DHS states in its reply brief that it does not dispute these two statements.  (Filing 39, at 2.)  Gerdes also states that "[n]either Gydesen nor Gerdes had previously acted as assistant director for the records division. (Ex. D, 73: 14-20)."  (Filing 36, at 5, ¶ 34.)

55.     On or about October 26, 2006, Plaintiff filed a complaint with the EEO office regarding his non-selection for the Assistant Center Director position in the Records Division (Plaintiff's Depo. 61:5-9; Ex. 4; Maltby Decl. ¶ 6).

(Filing 31, at 2-3, 10-17 (headings omitted; hyperlinks added).)

"A plaintiff may survive summary judgment either by direct evidence of discrimination, or by creating an inference of discrimination under the burden-shifting test in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and then rebutting any proffered nondiscriminatory reason for the employment decision with sufficient evidence of pretext." *Wimbley v. Cashion*, 588 F.3d 959, 961 (8th Cir. 2009). Gerdes has presented no direct evidence that he was not selected for the Nebraska position because of past EEO complaints,[21]

---

[21] "Direct evidence in this context is not the converse of circumstantial evidence, as many seem to assume. Rather, direct evidence is evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action." *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004) (quoting *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir.1997)). "Thus, 'direct' refers to the causal strength of the proof, not whether it is 'circumstantial' evidence. A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial. But if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Id. See also Bakhtiari v. Lutz*, 507 F.3d 1132, 1135-37 (8th Cir. 2007) ("Because there is no evidence, direct or circumstantial, showing a specific link between [plaintiff] and any alleged retaliatory practices prohibited by Title VII, the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green* applies.")(footnote, internal quotation, and citations omitted), *cert. denied*, 128 S.Ct. 2442 (2008). *But see Carraher v. Target Corp.*, 503 F.3d 714, 716 (8th Cir. 2007) ("Where the plaintiff presents only circumstantial evidence of

25

so the *McDonnell Douglas* framework applies.  Gerdes thus has the initial burden to establish a prima facie case of retaliatory discrimination; if Gerdes establishes a prima facie case, the burden then shifts to DHS to articulate a legitimate, non-discriminatory reason for its decision; and if DHS articulates such a reason, the burden returns to Gerdes to prove that the proffered reason is pretextual.  *See id.*

To establish a prima facie case of retaliation, Gerdes must prove (1) he engaged in protected conduct, (2) he was subjected to an adverse employment action, and (3) there is a "causal nexus between the protected conduct and the adverse action." *Lewis v. Heartland Inns of America, L.L.C.*, 591 F.3d 1033, 1042 (8th Cir. 2010).  For purposes of the summary judgment motion, DHS concedes that Gerdes can prove the first element and does not contest his ability to prove the second element.  (Filing 31, at 28, 33.)  However, DHS denies there is a causal connection between Gerdes' 1997 and 1998 EEO complaints and the 2006 decision not to hire him for the position of Assistant Center Director (Records) at the Nebraska Service Center.  I agree there is insufficient evidence to prove this third element.

The evidence shows:  Gerdes' first EEO complaint was filed in January 1997, and such complaint was followed by a lawsuit which resulted in a jury verdict in Gerdes' favor in December 1999.  (See paragraphs 8 and 9 of DHS's statement of material facts.)   The second EEO complaint was filed in October 1998 and was settled in October 2000.  (See paragraph 10 of DHS's statement of material facts.)  The vacancy announcement for the Assistant Center Director (Records) position was posted in May 2006, and Gerdes learned that he had not been selected for the position in August 2006.  (See paragraphs 28 and 54 of DHS's statement of material facts.)  Thus, Gerdes' participation in protected activity ended almost six years before the adverse employment action.

---

discrimination, . . . we apply the familiar burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*.").

26

Although not dispositive, the time lapse between an employee's protected activity and the employer's adverse action is an important factor when evaluating whether a causal connection has been established. *Van Horn v. Best Buy Stores, L.P.*, *526 F.3d 1144, 1149 (8th Cir. 2008)*.  Temporal proximity between the protected activity and the alleged retaliatory act must generally be "very close" to support a Title VII claim.  *Heaton v. The Weitz Co., Inc.*, *534 F.3d 882, 888 (8th Cir. 2008)*. "Though in rare circumstances an adverse action may follow so closely upon protected conduct as to justify an inference of a causal connection between the two, [the Eighth Circuit has] held that an interval of two months is too long to support such an inference." *Van Horn*, 526 F.3d at 1149 (citing *Kipp v. Missouri Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002)).

While *Van Horn* and *Kipp* involved termination decisions, as opposed to a hiring decision, it is obvious that the 6-year interval in this case is far too long to permit an inference of a retaliatory motive.  *See Sims v. Sauer-Sundstrand Co.*, *130 F.3d 341, 344 (8th Cir. 1997)* ("The simple fact of not being hired or asked to interview for a position after an EEOC filing is, by itself, insufficient to prove causal connection, particularly when the incident occurred more than two years after the protected activity.")

The only evidence of a possible linkage between the 2006 hiring decision and Gerdes' previous EEO complaints is the fact that one member of the interviewing panel, Mike Lebow, supervised Gerdes for less than a year in approximately 1999, while the federal lawsuit was pending on the first EEO complaint and a settlement was being negotiated on the second EEO complaint.  (See paragraphs 33 and 36 of DHS's statement of material facts.)  Gerdes claims that Lebow was biased against him,[22] but he has presented no evidence that Lebow had any involvement with the

---

[22] There is evidence that Gerdes filed a grievance in 1998 after Lebow evaluated his performance as "excellent" rather than "outstanding", and that Lebow was annoyed at his supervisor when the evaluation was changed.

EEO complaints or with the agency actions that led to the filing of such complaints. The first EEO complaint concerned Gerdes' non-selection in 1996 for a Contractor Performance and Analysis Unit Analyst position at the NSC, and the second EEO complaint, filed in 1998, concerned Gerdes' non-selection for a Supervisory Program Analyst position at the NSC.

To avoid summary judgment, Gerdes must submit "affirmative evidence [of] a retaliatory motive." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (quoting *Wilson v. Northcutt*, 441 F.3d 586, 592 (8th Cir. 2006)).  Evidence that Lebow and Gerdes "had [their] differences," for reasons unrelated to Gerdes' EEO activities, is not sufficient to establish a prima facie case.  Gerdes' belief that Lebow acted from a retaliatory motive is insufficient.  *See Wilson*, 441 F.3d at 593.  In any event, there is no evidence that the other two members of the interviewing panel had any knowledge of Gerdes' EEO activities or were influenced by Lebow when they did not rank Gerdes as one of the three finalists for the position.  It is undisputed, in fact, that the panel members did not discuss the interviewees before independently ranking them.  (See paragraph 47 of DHS's statement of material facts.)  Because Gerdes has not shown there is a genuine issue of material fact on the element of causation, his claim fails as a matter of law.

Accordingly,

IT IS ORDERED that:

1.  The defendant's motion to dismiss (filing 29, part 1) is denied.

2.  The defendant's motion for summary judgment (filing 29, part 2) is granted, as follows:

4:08-cv-03246-RGK-CRZ   Doc # 42   Filed: 03/26/10   Page 29 of 29 - Page ID # 610

a.     The plaintiff's claims that he was retaliated against in connection with his reclassification and his non-selection for the Missouri position are dismissed without prejudice for the plaintiff's failure to exhaust his administrative remedies regarding such claims.

b.     The plaintiff's claim that the was retaliated against in connection with his non-selection for the Nebraska position is dismissed with prejudice.

3.     Final judgment shall be entered by separate document.

March 26, 2010.                              BY THE COURT:

                                             *Richard G. Kopf*
                                             United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.